IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**CLARENCE MURRAY**,

    **Movant,**

v.                                         Case No. 2:19-cv-00106
                                               Criminal Case No. 2:17-cr-00011

**UNITED STATES OF AMERICA**

    **Respondent.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Pending before the Court are Movant's *pro se* Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255, (ECF No. 68), and Respondent's Response, in which it seeks dismissal of the § 2255 motion. (ECF No. 74).[1] This matter is assigned to the Honorable Irene C. Berger, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having determined from a thorough review of the record that Movant clearly is not entitled to relief under 28 U.S.C. § 2255, the undersigned **FINDS** no basis for an evidentiary hearing. Accordingly, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** Movant's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255; **GRANT** the Motion to Dismiss; **DISMISS** this civil action,

---

[1] The citations in this PF&R reference Movant's criminal case: *United States v. Murray*, No. 2:17-cr-00011 (S.D.W. Va. 2017).

1

with prejudice; and **REMOVE** this matter from the docket of the Court.

I.  **Factual and Procedural Background**

On October 31, 2016, Movant Clarence Murray ("Murray") was charged in a criminal complaint with violating 21 U.S.C. § 841(a)(1) by distributing methamphetamine, a schedule II controlled substance. (ECF No. 1). On January 31, 2017, the criminal complaint was superseded by an Information, charging Murray with one count of distributing heroin, in violation of 21 U.S.C. § 841(a)(1). (ECF No. 14). A few days later, the Government filed an Information pursuant to 21 U.S.C. § 851, notifying Murray that the Government intended to rely on a prior drug trafficking conviction incurred by Murray in order to seek an enhanced sentence. (ECF No. 15). According to the Government, Murray was convicted in 2007 of violating New Jersey Statutes Annotated ("NJSA") § 2C:35-7 when he possessed with intent to distribute a controlled substance within 1,000 feet of school property. (*Id.*).

On February 22, 2017, consistent with a plea agreement that he signed on December 23, 2016, Murray pleaded guilty to the Information charging him with heroin distribution. (ECF Nos. 18, 21, 22). As part of the plea agreement, Murray knowingly and voluntarily waived his right to seek appellate review of any conviction and associated sentence of imprisonment, except in the event that the sentence imposed exceeded the maximum penalty allowed by statute, or the appeal alleged ineffective assistance of counsel. (ECF No. 22 at 5) Murray likewise waived his right to collaterally attack his conviction and sentence, except for an attack based on the ineffective assistance of counsel. (*Id.*). At the plea hearing, this Court ordered the United States Probation Office to prepare and forward a draft presentence report ("PSR") to the Government and Murray, and provided a schedule for the filing of objections to the PSR. (ECF No. 23).

On July 3, 2017, Murray, by counsel, filed objections to the PSR, challenging, *inter alia,* the Probation Officer's conclusion that Murray was a career offender under the United States Sentencing Guidelines ("USSG"). (ECF No. 35 at 3-5). Pursuant to USSG § 4B1.1, a defendant who qualified as a career offender was subject to enhanced penalties. A defendant was a career offender if (1) the defendant was at least eighteen years of age at the time the defendant committed the instant offense; (2) the instant offense of conviction was either a felony crime of violence or a felony controlled substance offense; and (3) the defendant had at least two prior felony convictions of either a crime of violence or a controlled substance offense. USSG § 4B1.1 (2016). USSG § 4B1.2(2) defined the term "controlled substance offense" to mean "an offense under a federal or state law, punishable by a term of imprisonment exceeding one year, that prohibits the manufacture, import, export, or distribution of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, or distribute." USSG § 4B1.2(2) (2016).

In his objections, Murray, who had several prior drug trafficking convictions, indicated that these convictions were based on violations of NJSA § 2C:35-5(a), which prohibited (1) the manufacture, distribution, dispensing, or possession with the intent to manufacture, distribute, or dispense a controlled dangerous substance or controlled substance analogue; and (2) the creation, distribution, or possession with intent to distribute a counterfeit controlled dangerous substance. (*Id.* at 4). New Jersey defined the term "controlled dangerous substance" specifically to include controlled substance analogues. Murray noted that, in contrast, USSG § 4B1.2 did not expressly include analogues in its definition of "controlled substance offense." Murray contended that, given this difference between the New Jersey statute and the USSG, the New Jersey

3

statute criminalized behavior that was broader than the behavior described in the USSG's definition of controlled substance offense found in the career offender guidelines. (ECF No. 35 at 5). As such, offenses under NJSA § 2C:35-5(a) were not categorically controlled substance offenses that qualified as predicate convictions for application of the career offender guidelines. Moreover, Murray contended that New Jersey's definition of "analogue" was broader than the federal definition, because the federal definition only related to Schedule I and II controlled substances, while New Jersey's definition had no such limitation. (*Id.*). Consequently, Murray asserted, his prior drug convictions did not qualify as predicate offenses under the career offender guidelines. (*Id.*).

In a Sentencing Memorandum filed on July 31, 2017, Murray expounded on his argument against the career offender designation. (ECF No. 36). Murray reviewed decisions of the Supreme Court of the United States ("Supreme Court"), beginning with *Taylor v. United States,* 495 U.S. 575 (1990), in which the Supreme Court provided guidance on how sentencing courts should determine whether a defendant's prior conviction qualified as a predicate offense for application of a career criminal sentence enhancement. (*Id.* at 4). Murray indicated that courts were to use a categorical analysis, comparing the elements of the statute underlying the prior conviction to the elements of the generic crime. If the statute underlying the conviction had elements that matched or were narrower than the elements of the generic crime, the conviction qualified as a predicate offense. In this analytical approach, the underlying facts leading to the conviction were not relevant. However, in cases where the statute underlying the conviction included alternate elements (i.e. was "divisible"), the sentencing court used a modified categorical approach, which allowed the court to examine certain categories of judicial records to determine which elements comprised the crime of conviction. Once the

4

elements were identified, those elements were compared to the generic crime to see if the conviction was for a crime that categorically matched the generic crime. Murray contended that NJSA § 2C:35-5(a) did not contain separate elements; rather, it punished behavior involving controlled dangerous substances and controlled dangerous substance analogues. Murray asserted that because the New Jersey statute criminalized broader behavior than the definition of controlled substance offense in the USSG's career offender guidelines, his New Jersey convictions could not be counted. (ECF No. 36).

On August 7, 2017, this Court held a hearing on Murray's objections to the PSR. (ECF No. 40). The Court took the objections under advisement, and allowed the parties to submit supplemental memoranda addressing the career offender designation. (ECF Nos. 41, 42). In its brief, the Government maintained that the New Jersey statute was divisible, because it contained different penalties for different behavior, and the Court should apply a modified categorical approach to determine if Murray's prior convictions qualified as predicate offenses. (ECF No. 41). Murray, on the other hand, posited that none of the cases cited by the Government in support of its position addressed the key issue in Murray's case; that being, whether the inclusion of analogues in New Jersey's statute rendered the statute "categorically overbroad, thus precluding convictions under that statute from qualifying as controlled substance offenses under the Guidelines." (ECF Nos. 41, 42 at 2). Murray again argued that, by definition, "controlled dangerous substances" in the New Jersey statute included analogues; therefore, the fact that behavior involved an analogue versus a controlled substance was not a separate element of the crime of conviction. (ECF No. 42 at 3-4).

On January 10, 2018, the Court entered a Memorandum Opinion and Order, denying Murray's objections to the career offender designation. (ECF No. 43 at 3). Relying

5

on several Third Circuit cases, the Court found that NJSA § 2C:35-5(a) was divisible, requiring the Court to apply the modified categorical approach in determining if Murray's prior convictions qualified as predicate offenses under the career offender guidelines. (ECF No. 43 at 3). Using this approach, the Court examined relevant records pertaining to Murray's prior convictions and concluded that Murray's New Jersey convictions were "controlled substance offenses" for purposes of applying the career offender enhancement. (*Id.* at 10).

On January 24, 2018, Murray, by counsel, submitted a "Motion to Reconsider Career Offender Determination." (ECF No. 45). Murray reiterated his arguments regarding NJSA § 2C:35-5(a), again asserting that the Third Circuit cases relied upon by the Court did not resolve the precise issue raised by Murray with respect to analogues. Murray added that the Court improperly relied upon unpublished decisions in reaching its conclusion that Murray's convictions qualified as predicate offenses under the career offender guidelines. (*Id.*). On April 5, 2018, the Court denied the Motion to Reconsider, noting that the "Controlled Substance Analogue Enforcement Act of 1986 'instructs courts to treat [listed controlled substance analogues], if intended for human consumption, as controlled substances … for the purposes of federal law.'" (ECF No. 47 at 2). As such, the Court found that NJSA § 2C:35-5(a) was not materially different or broader than the federal guidelines detailing application of the career offender enhancement. (ECF No. 47 at 3).

Murray was sentenced on April 26, 2018. (ECF No. 48). At the sentencing hearing, Murray's counsel again raised an objection to the career offender designation, this time arguing that the Controlled Substance Analogue Enforcement Act of 1986 did not apply, because that Act governed only the interpretation of statutes and not advisory sentencing

6

guidelines. (ECF No. 58 at 5-6). Counsel stressed that, at various sections of the USSG, controlled substance analogues were treated differently than controlled substances; thereby, demonstrating that the Sentencing Commission did not intend analogues to be included in the definition of controlled substances, or to be treated in the same manner. (*Id.*). The Court was not persuaded by counsel's arguments and, using the career offender guidelines, sentenced Murray to 188 months' imprisonment, followed by six years of supervised release. (ECF No. 49). The Court explained that this sentence was within the guidelines range and was reasonable and appropriate given Murray's criminal history, his relevant conduct, and his habit of continued participation in drug trafficking even after receiving lengthy sentences for prior similar offenses. (ECF No. 58 at 28-31). The Court stated:

> In my review --- or in my view and my review of your past history, it's clear that you have a very high risk of recidivism. Even if I did not apply the career offender enhancement in this case, it would have been appropriate to vary up to reach a sentence like the one that I've imposed based on your history, lack of deterrence, even in the face of all of the prior sentences, the repeated violations of parole and probation, and your conduct in this case where you were warned by officers on at least two occasions and after search warrants, you continued to sell drugs.

(*Id.* at 31).

Murray appealed the career offender enhancement to the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") on June 11, 2018. (ECF Nos. 54, 64). The Government moved to dismiss the appeal on the ground that Murray had waived his right to challenge the career offender designation as part of the waiver included in his plea agreement. (ECF No. 64). On October 25, 2018, the Fourth Circuit granted the Government's motion and dismissed the appeal. (*Id.*). The Fourth Circuit found that Murray had knowingly and intelligently waived his right to appeal, and the issue he sought

to raise in the Fourth Circuit rested squarely within the scope of that waiver. (*Id.*).

On February 12, 2019, Murray filed the instant Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255. (ECF No. 68). In the Motion, Murray raises two overarching challenges to his sentence. First, he claims that this Court erred by using the career offender guidelines to enhance his sentence. Murray states that the Court improperly relied upon non-precedential opinions, confused counterfeit controlled substances and controlled substance analogues, and erroneously found NJSA § 2C:35-5(c) to be divisible and thus subject to the modified categorical approach in evaluating whether Murray's prior convictions qualified as predicate offenses for implementation of the career offender enhancement.

Second, Murray contends that his counsel provided ineffective assistance by not referring to *Class v. United States,* 138 S. Ct. 798 (2018), in Murray's appeal to the Fourth Circuit. According to Murray, *Class* holds that "a defendant's plea of guilty does not waive his previous constitutional claim" on appeal. In Murray's case, he claims his plea waiver did not preclude his due process right to challenge the constitutionality of the Court's imposition of a career offender enhancement. (*Id.* at 10-14).

On May 9, 2019, the United States filed a response in opposition to Murray's § 2255 motion. Respondent argues that Murray knowingly and intelligently waived his right to challenge his sentence except on two narrow grounds. (ECF No. 74). Despite agreeing to the waiver, Murray appealed the Court's sentence to the Fourth Circuit, relying on the same arguments that he now presents in his § 2255 motion. Respondent emphasizes that the Fourth Circuit has already found Murray's waiver of appellate rights to bar a challenge based on the career offender enhancement; accordingly, Murray's first claim should be summarily dismissed. (ECF No. 74 at 5-6).

In regard to Murray's second claim related to his counsel's performance, Respondent asserts that Murray fails to demonstrate ineffective assistance of counsel, because he cannot show prejudice. Respondent points to the Court's comments at sentencing in which the Court advised that it would have sentenced Murray to 188 months of imprisonment even if his guidelines range had not been enhanced by the career offender guidelines. Respondent argues that, given these statements by the Court, Murray cannot show prejudice. (*Id.* at 9-10). In addition, Respondent emphasizes Murray's assurances, made at his plea and sentencing hearings, that he was satisfied with counsel's performance. Respondent claims that Murray is bound by the statements he made at those hearings and cannot disavow them when convenient. (*Id.* at 11-13).

On December 19, 2019, Murray replied to Respondent's opposition brief. (ECF No. 75). Murray maintains that his waiver did not operate to preclude constitutional claims, such as those he currently raises in his § 2255 motion. Murray admits that his waiver has forced him "to frame his habeas corpus claims under ineffectiveness of counsel," but posits that this Court should nonetheless address the underlying constitutionality of a plea waiver that forces a defendant to waive rights that cannot be known or predicted at the time the waiver is signed. Murray stresses that the First Step Act has changed the landscape in regard to felony drug convictions, and that this Act alone should prompt the Court to examine the propriety of Murray's sentence. (*Id.*).

## II. **Standard of Review**

Respondent requests that Murray's motion be denied as meritless and his case be dismissed. (ECF No. 74 at 1). Respondent does not articulate under which rule's authority he seeks dismissal, but, presumably, this request is made pursuant to Federal Rule of Civil Procedure 12(b)(6). Because Respondent filed a Response concurrently with his motion

9

to dismiss, the motion technically should be considered as one for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009). However, the distinction makes no practical difference as the same standard of review applies to motions to dismiss under Rule 12(b)(6) and motions for judgment on the pleadings under Rule 12(c), and both motions may be filed in habeas actions. *Id.* at 138-39; *see also Martin v. U.S. Parole Comm'n*, No. CV PWG-17-3335, 2018 WL 2135009, at *1 (D. Md. May 9, 2018).

When deciding a motion for judgment on the pleadings, the court must accept all well-pleaded allegations of the petition as true and "draw all reasonable factual inferences" in favor of the petitioner. *See Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014); *Wolfe v. Johnson*, 565 F.3d 140, 169 (4th Cir. 2009). Nonetheless, the court is "not obliged to accept allegations that 'represent unwarranted inferences, unreasonable conclusions, or arguments,' or that 'contradict matters properly subject to judicial notice or by exhibit.'" *Massey*, 759 F.3d at 353 (quoting *Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir. 2006)). A court presented with a motion for judgment on the pleadings in a federal habeas case must consider "the face of the petition and any attached exhibits." *Walker*, 589 F.3d at 139 (quoting *Wolfe*, 565 F.3d at 169) (internal markings omitted). In addition, the court may consider "matters of public record," including documents from prior or pending court proceedings, when resolving the motion without converting it into a motion for summary judgment. *Id.* The Court "may also consider documents attached to the complaint ... as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

### III. **Discussion**

A motion made pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction or sentence that was entered in a separate proceeding. To succeed on such a motion, the movant must prove that the conviction or sentence was imposed in violation of the laws or Constitution of the United States; or the court imposing the sentence lacked jurisdiction; or the sentence exceeded the maximum authorized by law; or the sentence was otherwise subject to collateral attack. 28 U.S.C. § 2255. "A motion collaterally attacking a prisoner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." *Sutton v. United States of America,* No. CRIM.A. 2:02CR65, Civ.A. 2:05CV91, 2006 WL 36859, at *2 (E.D. Va. Jan. 4, 2006). Pursuant to the Rules Governing Section 2255 Proceedings for the United States District Courts ("Rules"), the court should conduct a preliminary review of the motion. *See* Rule 4. The court may then order the respondent to answer the motion and may authorize the parties to conduct discovery; the court may also direct the parties to expand the record as necessary to properly assess the validity of the motion. *See* Rules 5, 6, & 7. Once these steps are completed, the court must review the answer, transcripts, records of prior proceedings, and any other materials submitted to determine whether an evidentiary hearing on the motion is warranted. *See* Rule 8(a). If the movant is clearly unable to state a claim that entitles him to relief, the court may deny the motion without an evidentiary hearing. *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970). Furthermore, "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." *United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013).

### A. Claim that the Court Erroneously Applied Career Offender Guidelines

As part of his plea agreement, Murray waived his right to appeal or collaterally attack his sentence as follows:

> Mr. Murray knowingly and voluntarily waives his right to seek appellate review of his conviction and of any sentence of imprisonment, fine, or term of supervised release imposed by the District Court, or the manner in which the sentence was determined, **on any ground whatsoever** including any ground set forth in 18 U.S.C. § 3742(a), except that the defendant may appeal any sentence that exceeds the maximum penalty prescribed by statute. … Mr. Murray also knowingly and voluntarily waives the right to challenge his guilty plea and conviction resulting from this plea agreement, and any sentence imposed for the conviction, in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255. The waivers noted above shall not apply to a post-conviction collateral attack or direct appeal based on a claim of ineffective assistance of counsel.

(ECF No. 22 at 5) (emphasis added). The Fourth Circuit has already determined that Murray entered into this waiver knowingly and intelligently. (ECF No. 64). Accordingly, Murray has waived his right to directly attack the Court's application of the career offender enhancement in either an appeal or in a § 2255 motion.

Murray suggests that the waiver in his plea agreement does not bar him from filing a challenge to his sentence based upon "a previous constitutional claim." He relies on *Class v. United States*, 138 S. Ct. 798 (2018), to support his position. In *Class,* the Supreme Court held "that a guilty plea, by itself, does not foreclose a challenge on appeal to the constitutionality of the statute of conviction." *United States v. Hair,* 780 F. App'x 86, n. 1 (2019) (citing *Class,* 138 S. Ct. at 804-05). The *Class* decision is inapposite to Murray's case, however, because Murray does not challenge the constitutionality of the statute of his conviction. Furthermore, Murray is not appealing the conviction, but rather is collaterally attacking his sentence. Lastly, the waiver considered in *Class* differed from the waiver in this case. In *Class*, the defendant waived specific categories of rights, while

in Murray's case, he relinquished his right to appeal the conviction and sentence *on any ground whatsoever*, except: (1) if the sentence exceeded the maximum penalty prescribed by statute, or (2) counsel provided ineffective assistance. *See, e.g. Oliver v. United States,* 951 F.3d 841, 846 (7th Cir. 2020) (rejecting the position that *Class* rendered all facial constitutional challenges to a statute of conviction unwaivable and finding that *Class* only interpreted the effect of a guilty plea on such challenges); *United States v. Lloyd,* 901 F.3d 111, 124, n. 11 (2d Cir. 2018) (holding that the waiver in *Class* was not as broad as the waiver in *Lloyd,* and that the *Class* decision did not uniformly invalidate *waivers* of the right to appeal the constitutionality of the statute of conviction). Accordingly, Murray does not state a viable argument under *Class*. With respect to Murray's contention that the landscape of federal drug convictions has changed and new laws, such as the First Step Act, direct the Court to examine the merits of his motion, the undersigned finds Murray's position to be unpersuasive. Murray has not articulated any specific claim for relief under the First Step Act, and the Court may dispose of vague and conclusory statements without further investigation. *Dyess,* 730 F.3d at 359.

Therefore, for the reasons stated, the undersigned **FINDS** that Murray is precluded by the Fourth Circuit's prior opinion, and by Murray's waiver of such claims, from reasserting alleged errors by the Court in applying the career offender enhancement.

### B. *Claim of Ineffective Assistance of Counsel*

Murray contends that his counsel provided ineffective assistance on appeal by failing to argue the *Class* case. (ECF No. 68 at 10). In Murray's view, had counsel directed the Fourth Circuit to *Class,* the Fourth Circuit would not have found that Murray waived his right to challenge the sentencing court's application of the career offender enhancement.

13

A claim of ineffective assistance of counsel alleges a violation of the Sixth Amendment to the United States Constitution, which guarantees every criminal defendant "the right to the effective assistance of counsel." *Strickland v. Washington,* 466 U.S. 668, 680 (1984). Under *Strickland,* a criminal defendant can prove ineffective assistance of counsel by meeting the requirements of a two-pronged test. *Id.* at 687. The defendant carries the burden of satisfying both prongs of the test, and "a failure of proof on either prong ends the matter." *United States v. Roane,* 378 F.3d 382, 404 (4th Cir. 1994).

First, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 687-88. "Effective assistance of appellate counsel does not require the presentation of all issues on appeal that may have merit." *United States v. Mason*, 774 F.3d 824, 828–29 (4th Cir. 2014) (internal quotation marks and citation omitted). As the Fourth Circuit has explained:

> Indeed, winnowing out weaker arguments on appeal and focusing on those more likely to prevail ... is the hallmark of effective appellate advocacy. But appellate counsel may render deficient performance by failing to raise issues [that] are clearly stronger than those presented. The ineffective assistance inquiry therefore requires a court to compare the strength of an issue not raised on direct appeal ... with the strength of arguments that were raised.

*United States v. Allmendinger*, 894 F.3d 121, 126 (4th Cir. 2018) (internal quotation marks and citations omitted). When evaluating counsel's performance under the first prong of *Strickland,* "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland,* 466 U.S. at 689. "In applying [the Strickland] test to claims of ineffective assistance of counsel on appeal ... reviewing courts must accord appellate counsel the 'presumption that he decided which issues were most likely to afford relief on appeal.'" *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (quoting *Pruett v. Thompson,*

14

996 F.2d 1560, 1568 (4th Cir. 1993)). Counsel's performance should be assessed with "a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time." *Wiggins v. Smith,* 539 U.S. 510, 523 (2003). Moreover, the reviewing court should not allow hindsight to alter its assessment of counsel's performance. *Yarborough v. Gentry,* 540 U.S. 1, 8 (2003) ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight."). Put simply, the inquiry under *Strickland* is "whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington v. Richter,* 562 U.S. 86, 88 (2011).

Second, the defendant must show that he was actually prejudiced by the ineffective assistance of counsel. *Strickland,* 466 U.S. at 687. In the context of alleged ineffective assistance on appeal, the defendant must show a reasonable probability that, but for his counsel's failure to raise the stronger argument, the defendant would have prevailed on his appeal. *Smith v. Robbins,* 528 U.S. 259, 285 (2000).

In this case, Murray acknowledges that his counsel raised, both at sentencing and on appeal, the precise issue currently championed by Murray in his § 2255 motion. (ECF No. 68 at 10). The record reflects that Murray's counsel vigorously argued that Murray's New Jersey convictions should not have qualified as predicate offenses for application of the career offender enhancement. Accordingly, it is clear that counsel submitted to the Fourth Circuit the strongest argument available to Murray. Therefore, Murray's contention that his counsel's performance was deficient is unavailing.

However, assuming *arguendo* that the failure to include one case citation in an appellate brief can constitute ineffective assistance of counsel—which it plainly does not

15

here—Murray cannot demonstrate prejudice. As previously explained, *Class* simply does not apply to Murray's situation. The *Class* decision answers only one question; that being, whether a guilty plea, by itself, bars a federal criminal defendant from challenging the constitutionality of his statute of conviction on direct appeal. *Class,* 138 S. Ct. at 800. On appeal, Murray was not attacking the constitutionality of his statute of conviction. He pled guilty to distributing heroin and the constitutionality of 18 U.S.C. § 841(a)(1) was never questioned by Murray. Instead, Murray objected to a sentence enhancement imposed by the Court under the USSG. Furthermore, the Fourth Circuit dismissed the appeal, not based on Murray's guilty plea, but rather based on the express language of a waiver in the plea agreement that Murray knowingly and intelligently accepted.

Therefore, the undersigned **FINDS** that Murray has failed to establish that his appellate attorney's performance was objectively deficient, and that the alleged deficiency resulted in prejudice.

In summary, the undersigned has considered Murray's claims and concludes that they clearly fail to state a claim which entitles him to relief; therefore, the undersigned **FINDS** that Murray's § 2255 petition should be dismissed.

## IV.     Proposal and Recommendations

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the District Court accept and adopt the findings proposed herein and **RECOMMENDS** that Movant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, (ECF No. 68), be **DENIED;** that Respondent's motion to dismiss, (ECF No. 74), be **GRANTED;** and that this civil action be **DISMISSED, with prejudice,** and removed from the docket of this Court.

The parties are notified that this "Proposed Findings and Recommendations" is

hereby **FILED**, and a copy will be submitted to the Honorable Irene C. Berger, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Berger, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Movant and counsel of record.

**FILED**: April 16, 2020

_____
Cheryl A. Eifert
United States Magistrate Judge